IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  21-cv-02306-RM-KLM

ROBERT-LAWRENCE PERRY,

     Plaintiff,

v.

THE STATE OF COLORADO,
THE CITY OF FORT COLLINS,
CSU BOARD OF GOVERNORS,
COLORADO STATE UNIVERSITY, and
STEVEN VASCONCELLOS,

     Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on the **Motion to Dismiss** [#51],[1] filed by Defendant City of Fort Collins (the "City"), and the **Motion to Dismiss** [#53], filed by Defendants Colorado State University Board of Governors (the "Board") and Steven Vasconcellos ("Vasconcellos") (collectively, the "State Defendants").  Plaintiff, who proceeds as a pro se litigant,[2] filed Responses [#58, #59], and Defendants filed Replies [#60, #61].  Pursuant

---

[1]  "[#51]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

[2]  This Court must construe liberally the filings of a pro se litigant.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  In doing so, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).  In addition, a pro se litigant must follow the same procedural rules that govern other litigants.  *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1(c), the Motions [#51, #53] have been referred to the undersigned for a recommendation regarding disposition.  *See* [#52, #54].  The Court has reviewed the briefs, the entire case file, and the applicable law, and is sufficiently advised in the premises.   For the reasons set forth below, the Court **RECOMMENDS** that the Motions [#51, #53] be **GRANTED**.

## I. Background[3]

Plaintiff lives in Fort Collins and is a Colorado State University ("CSU") alumnus. *Second Am. Compl.* [#50] ¶¶ 4, 74.  At all times relevant to the events underlying this lawsuit, Plaintiff was indigent and/or homeless.  *Id.* ¶ 4.  Plaintiff asserts that the CSU campus police issued him several "exclusionary orders," allegedly for feeding squirrels on campus.[4]  *Id.* ¶ 76.  An exclusionary order "provides for immediate exclusion or banishment" from the CSU campus.  *Id.* ¶ 81.  CSU's exclusionary orders are enforced by citations of trespass under Fort Collins Municipal Code § 17-40(a) and Colo. Rev. Stat. § 18-4-504.[5]  *Id.*   The exclusionary orders cite Colo. Rev. Stat. § 18-9-109 as legal

---

[3] All well-pled facts from the Second Amended Complaint [#50] are accepted as true and viewed in the light most favorable to Plaintiff as the nonmovant.  *Barnes v. Harris*, 783 F.3d 1185, 1191-92 (10th Cir. 2015).

[4] Plaintiff includes one allegation in his Second Amended Complaint [#50] involving an older exclusionary order issued against him specifically for feeding squirrels.  *Second Am. Compl.* [#50] ¶ 107.  This exclusionary order, issued on May 18, 2016, was "lifted without the necessity of an exclusionary order appeal 'hearing.'"  *Id.* ¶ 103.  Plaintiff also includes in his Second Amended Complaint [#50] other citations for trespassing and camping that were subsequently dismissed. *See id.* ¶¶ 104, 149.

[5] In relevant part, Colo. Rev. Stat. § 18-4-504 provided at the time of the alleged underlying offenses: "(1) A person commits the crime of third degree criminal trespass if such person unlawfully enters or remains in or upon premises of another.  (2) Third degree criminal trespass is a class 1 petty offense . . . ."  Effective March 1, 2022, it has been amended to remove the words "class 1."

authority to remove people from campus who "disrupt, impair, interfere with, or obstruct the lawful missions, processes, procedures, or functions of the institution." *Id.* ¶ 82.

On July 20, 2018, a CSU police officer issued Plaintiff a citation for trespassing under Colo. Rev. Stat. § 18-4-504 and an exclusionary order barring him from the CSU campus. *Id.* ¶ 127. On August 7, 2018, CSU upheld the exclusionary order on appeal after conducting a telephonic hearing. *Id.* ¶ 129. On August 24, 2018, CSU again affirmed the exclusionary order after Plaintiff submitted a written appeal to the exclusionary order review committee. *Id.* ¶¶ 130-32. On November 20, 2018, Plaintiff emailed the CSU Board of Governors with questions regarding the exclusionary order policy. *Id.* ¶ 133. Plaintiff demanded a response within ten days, stating that he would otherwise disregard any exclusionary order and return to CSU. *Id.* Plaintiff returned to CSU when he did not receive a response within fifteen days. *Id.*

On May 17, 2019, another CSU police officer issued Plaintiff a citation for trespassing under Colo. Rev. Stat. § 18-4-504 and an exclusionary order. *Id.* ¶ 134. The CSU police officer allegedly accessed the Colorado Crime Information Center database and purportedly "entered a false report of a permanent criminal protective order against Plaintiff" without a "court ordered restraining order prohibiting Plaintiff from entering CSU property." *Id.* ¶ 136. On July 12, 2019, the same CSU police officer issued Plaintiff a second citation for trespassing, this time under Fort Collins Municipal Code § 17-40(a). *Id.* ¶ 222. It is unclear what specific procedural events took place following Plaintiff's trespass citation under Fort Collins Municipal Code § 17-40(a). It appears that after a jury trial on an unspecified date, Plaintiff was found guilty of trespassing under Fort Collins Municipal Code § 17-40(a). *Id.* ¶ 280. Plaintiff was sentenced to sixty-six days in jail;

however, "60 days were suspended upon [the] condition that Plaintiff was denied access and use of [CSU] for one year." *Id.* ¶ 209.  Plaintiff appealed and his conviction was affirmed, including the order denying Plaintiff's access and use of CSU property for one year. *Id.* ¶¶ 210, 213.

Plaintiff filed this lawsuit on August 26, 2021. *See* [#1].  On April 29, 2022, Plaintiff filed the Second Amended Complaint [#50], asserting §§ 1983, 1985, and 1986 claims. Claim 1 relates to CSU's exclusionary order policy. *Id.* ¶¶ 260-273.  This claim asserts that CSU's exclusionary order policy violates Plaintiff's substantive and procedural due process rights under the Fifth and Fourteenth Amendments and that the exclusionary orders deny Plaintiff equal protection in violation of the Fourteenth Amendment. *Id.* ¶¶ 263, 264, 269.  Claim 2 appears to relate to the enforcement of the State and City Defendants' trespass laws. *Id.* ¶¶ 274-285.  This claim appears to assert that CSU and the City denied Plaintiff's right to due process and equal protection of the law under the Fifth and Fourteenth Amendments and that Plaintiff "continues to suffer, actual, irreparable, permanent injury due to enforcement of the state and city trespass laws." *Id.* ¶¶ 283, 285.  Claim 2 also asserts that Plaintiff was "unlawfully prosecuted, unlawfully convicted, and unlawfully imprisoned," appearing to assert a violation of the Eighth Amendment. *Id.* ¶ 276.  Claim 3 relates to the City's trespass ordinance. *Id.* ¶¶ 286-296. This claim asserts that the City's trespass ordinance denies Plaintiff his "Eighth, Fifth, and Fourteenth Amendment Rights to due process and equal protection of the law." *Id.* ¶ 288. Claim 4 relates to the City's camping ordinances. *Id.* ¶¶ 297-306.  This claim asserts that the City's camping ordinances violate his "Constitutional Rights under the 4th, 5th, 8th and 14th Amendments." *Id.* ¶ 306.  Plaintiff seeks declaratory and injunctive relief. *Id.* ¶¶

273, 285, 296, 306.  The Court further discusses the construction of Plaintiff's claims in Section III.A. below.

In the City's Motion [#51], the City contends that Plaintiff's claims challenging the City's trespass and camping ordinances must be dismissed because: (1) the statute of limitations bars Plaintiff's claims in part; (2) Plaintiff lacks standing to seek prospective relief regarding the City's trespass ordinance; (3) the *Rooker-Feldman* doctrine bars Plaintiff's wrongful conviction claim; (4) the City is entitled to absolute immunity for its employees' actions related to Plaintiff's criminal prosecution under the trespass ordinance; and (5) Plaintiff fails to plausibly plead any constitutional violation.  *Motion* [#51] at 1-2.

In the State's Motion [#53], the State Defendants contend that Plaintiff's claims challenging the exclusionary orders should be dismissed because: (1) the Court lacks subject matter jurisdiction; and (2) Plaintiff fails to state a claim upon which relief can be granted.  *Motion* [#53] at 5, 7.

## II.    Standard of Review

### A.    Fed. R. Civ. P. 12(b)(1)

The purpose of a motion to dismiss pursuant to Rule 12(b)(1) is to test whether the Court has jurisdiction to properly hear the case before it.  Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction.  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); Fed. R. Civ. P. 12(b)(1).  Statutes conferring subject matter jurisdiction on federal courts are to be strictly construed.  *F & S Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  "The burden

of establishing [subject matter jurisdiction] rests upon the party asserting jurisdiction."

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: a facial attack or a factual attack. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a facial attack on a complaint, the Court accepts the allegations of the complaint as true. *Id.* By contrast, when reviewing a factual attack on a complaint, the Court "may not presume the truthfulness of the complaint's factual allegations." *Id.* at 1003. With a factual attack, as in this case, the moving party challenges the facts upon which subject matter jurisdiction depends. *Id.* The Court therefore must make its own findings of fact. *Id.* In order to make its findings regarding disputed jurisdictional facts, the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing." *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir.), *cert. denied*, 484 U.S. 986 (1987)). The Court's reliance on "evidence outside the pleadings" to make findings concerning purely jurisdictional facts does not convert a motion to dismiss pursuant to Rule 12(b)(1) into a motion for summary judgment pursuant to Fed. R. Civ. P. 56. *Id.*

## B.    Fed. R. Civ. P. 12(b)(6)

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted."). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess

- 6 -

whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 17 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim for relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enforcement." *Id.* (brackets in original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n] [ ] that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a). *Iqbal*, 556 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

### III.   Analysis

A.     **Construction of Plaintiff's Second Amended Complaint [#50]**

1.     **Parties**

On April 29, 2022, in accepting Plaintiff's Second Amended Complaint [#50] for filing, the Court addressed the issue of which entities or individuals Plaintiff intended to name as Defendants in this lawsuit.  *Order* [#49] at 8-9.  The Court stated:

> In the case caption of the proposed Second Amended Complaint, Plaintiff identifies the defendants as follows:
>
>> Each 'STATE OF COLORADO' Individual employee, executive officer, and/or administrative official acting personally, individually, and/or in combination namely, Alita King, Thomas Lynch, and Daniel McDonald, and each 'doe' administrator, agent, and/or executive, and Steven Vasconcellos, and 'doe' judicial administrators; and
>>
>> The 'CITY OF FORT COLLINS', et. al., including each Individual administrative official, agent, employee and or executive officer, acting personally, individually, and or together, including each individual member of the city council and Mayor, the City Attorney, the City Manager, Darin Atteberry, Ross Cunniff, Gerry Horak, Ray Martinez, Kristin Stephens, Ken Summers, Wade Troxell, including 'doe' agents, administrators, executives, officers and / or each 'doe' appointee administrator, agent, police officer, official, and 'City' employees, namely, Brandi Lynn Neita, Dan Callahan, Jill Hueser, and Ryan Westlind; and
>>
>> CSU BOARD OF GOVERNORS, for 'CSU', and each individual member of the 'CSU Board of Governors', for 'COLORADO STATE UNIVERSITY' and each 'doe' and or named administrators, agents, employees or officials acting personally, individually, and or together, namely, Scott Harris, Jeff Goetz, Jesse Ihnen, Michael Lohman, Phil Morris, Derek Smith, Lynn Johnson, Mark Gill, and Nie Olsen, and each heir appointee and/or official; each Individual Jointly and Severally Liable as Co-Defendants.
>
> *See* [#39] at 13.  However, in the body of the Second Amended Complaint under the "Parties" heading, Plaintiff identifies only the following Defendants: (1) City of Fort Collins, (2) Colorado State University/Colorado State University Board of Governors, (3) Colorado Judicial Administrator Steven Vasconcellos, and (4) State of Colorado.  *Id.* at 15.  These, along with "Doe Agents," are the same Defendants listed in the currently-operative Amended Complaint [#24].  Without appropriate identification and other

information about the other persons mentioned in the caption of the proposed Second Amended Complaint, the Court is not inclined to interpret the proposed Second Amended Complaint as naming them as additional parties at this time.

For the reasons set forth above, and considering that leave to amend should be freely given, the Court permits Plaintiff leave to file his proposed Second Amended Complaint as asserted against the State of Colorado, the City of Ford Collins, the CSU Board of Governors, Colorado State University, and Steven Vasconcellos.

*Id.* No party objected to the Court accepting the Second Amended Complaint [#50] as to these five parties only.

Subsequently, however, Plaintiff disclaimed asserting claims against either Defendant State of Colorado or Defendant Colorado State University. *Response* [#59] at 10. For reasons explained more fully in the Court's Order and Recommendation [#73], the Court therefore has recommended that these two Defendants be dismissed from this lawsuit. Thus, should that Recommendation [#73] be adopted, the only three named Defendants remaining in this lawsuit are the City, the Board, and Mr. Vasconcellos, who are also the only three movants in the present Motions [#51, #53].

### 2.    Claims and Relief

Like the named parties have been, the claims and relief sought in the Second Amended Complaint [#50] continue to be moving targets, especially when read in connection with Plaintiff's Responses [#58, #59] which withdraw, disclaim, or clarify certain portions of his claims and/or requested relief. Plaintiff stated in his Responses [#58, #59] that he intended to formally seek leave to file a Third Amended Complaint "to eliminate allegations of criminal misconduct, and amend the allegations to eliminate claims of his unlawful arrest, unlawful conviction and unlawful imprisonment." *Response* [#58] at 2; *Response* [#59] at 2. He also affirms that, despite any statements in the

Second Amended Complaint [#50] to the contrary, he is "**not seeking monetary damages**" and is "**not seeking reversal of his trespass convictions**." *Motion* [#59] at 10 (emphases in original).

Plaintiff affirmatively states that he is seeking declaratory and injunctive relief regarding: (1) whether the "Colorado State University 'exclusionary order' policy is unconstitutional," (2) "[w]hether "CSU permanent 'exclusionary orders' are unconstitutional," (3) "[w]hether C.R.S. § 18-9-109(1) prohibits exclusion from CSU campus," (4) [w]hether the City trespass ordinance applies to state property like CSU," (5) "[w]hether F.C.M.C. Sec. 17-1(3) and (4) are unconstitutional as applied," (6) [w]hether Fort Collins 'camping' ordinances are facially unconstitutional," and (7) "[w]hether C.R.S. § 18-4-201(1) exempts public property from trespass laws." *Response* [#58] at 2; *Response* [#59] at 2. Although Plaintiff may not amend his operative complaint based on statements made in briefing on a motion to dismiss, *see, e.g.*, *In re Qwest Commc'ns Int'l., Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004), the Court notes that these seven issues are all encompassed in the claims Plaintiff has already made in the Second Amended Complaint [#50]. *See* [#50] ¶¶ 260-306.

However, the Court construes Plaintiff's explicit statements in his Responses [#58, #59] as seeking to voluntarily dismiss any other claims and forms of relief. Accordingly, the Court **recommends** that any claims or relief which could otherwise be construed from the Second Amended Complaint [#50] be **dismissed without prejudice**.

**B.     Fed. R. Civ. P. 12(b)(1)**

**1.     Eleventh Amendment**

The State Defendants argue that Plaintiff's claims against the Board are barred by Eleventh Amendment immunity.  *Motion* [#53] at 5-6.

"The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court."  *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001); *see also Wagoner Cnty. Rural Water Dist. No. 2 v. Grand River Dam Auth.*, 577 F.3d 1255, 1258 (10th Cir. 2009) ("The Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state.").[6]

The Court finds that the Board is an entity which operates as an arm of the State of Colorado and therefore is entitled to invoke Eleventh Amendment sovereign immunity. *See, e.g.*, *Corrigan v. Bd. of Trustees of Metro. State Univ. of Denver*, No. 19-cv-02475-CMA-NYW, 2020 WL 5536494, at *4 (D. Colo. Apr. 22, 2020), *recommendation adopted by Corrigan v. Bd. of Trustees of Metro. State Univ. of Denver*, No. 19-cv-02475-CMA-NYW, 2020 WL 3567049 (D. Colo. July 1, 2020), (citing Colo. Rev. Stat. § 23-54-102(6), which transferred all duties and powers formerly performed by the trustees of the state colleges in Colorado to the Board); *Harrison v. Univ. of Colo. Health Scis. Ctr.*, 337 F. App'x 750, 753 (10th Cir. 2009) (concluding that the University of Colorado was an arm of the state given that the Colorado Constitution considers educational institutions

---

[6] *Ex parte Young*, 209 U.S. 123 (1908), operates as an exception to this rule.  As explained by the Tenth Circuit, the *Ex parte Young* exception permits "'suits against state officials seeking to enjoin alleged ongoing violations of federal law.'"  *Peterson*, 707 F.3d 1197, 1205 (10th Cir. 2013); *see also Hill v. Kemp*, 478 F.3d 1236, 1255 (10th Cir. 2007) (stating that under *Ex parte Young*, "the Eleventh Amendment generally will not operate to bar suits so long as they (i) seek only declaratory and injunctive relief rather than monetary damages for alleged violations of federal law, and (ii) are aimed against state officers acting in their official capacities, rather than against the State itself").  Here, the Board as an entity is not a "state officer" acting in its "official capacity," so *Ex parte Young* does not apply.

supported by the State to be a State institution, and that this included divisions and employees in their official capacity within the University of Colorado)).

"Eleventh Amendment immunity applies to state entities regardless of the relief sought."  *Corrigan*, 2020 WL 5536494, at *4 (citing *Smith v. Plati*, 56 F. Supp. 2d 1195, 1202 (D. Colo. 1999).  Here, there is no indication that the Board has waived Eleventh Amendment immunity.  *See Motion* [#53] at 5-6.  Thus, the Eleventh Amendment bars Plaintiff's Claim One (regarding the CSU exclusionary policy) and Claim Two (regarding Fifth, Eighth, and Fourteenth Amendment violations) to the extent these two claims are asserted against the Board.  *See, e.g.*, *Corrigan*, 2020 WL 5536494, at *4 (recommending dismissal of claims against the Board of Trustees of Metropolitan State University of Denver on the basis of Eleventh Amendment immunity) (citing *Norris v. Univ. of Colo., Boulder*, 362 F. Supp. 3d 1001, 1021 (D. Colo. 2019) (dismissing the plaintiff's breach of contract claim against the University of Colorado because no waiver of sovereign immunity occurred)).

Accordingly, the Court **recommends** that the State Defendants' Motion [#53] be **granted** to the extent that Claims One and Two be **dismissed without prejudice in part** to the extent asserted against the Board.  *See, e.g.*, *Rural Water Sewer & Solid Waste Mgmt., Dist. No. 1, Logan Cnty., Okla. v. Guthrie*, 654 F.3d 1058, 1069 n.9 (10th Cir. 2011) (stating that dismissal on subject matter jurisdiction grounds is without prejudice).

### 2. *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine "'prevents a party losing in state court . . . from seeking what in substance would be appellate review of a state judgment in a United States district court, based on the losing party's claim that the state judgment itself

violates the loser's federal rights.'"  *Blake v. Hong*, No. 22-1110, 2023 WL 382928, at *2 (10th Cir. Jan. 25, 2023) (quoting *Tal v. Hogan*, 453 F.3d 1244, 1256 (10th Cir. 2006) (quotations and brackets omitted)).

### a.    The City

The City argues that Plaintiff's second claim regarding wrongful prosecution is barred by the *Rooker-Feldman* doctrine to the extent that claim is based on "the validity of CSU's underlying exclusionary order, the Court's jury instructions, and prosecutorial and judicial misconduct." *Motion* [#51] at 4-5.  However, based on the Court's analysis in Section III.A.2. above regarding Plaintiff's statements in his Responses [#58, #59], it appears that Plaintiff has withdrawn his complaints regarding jury instructions and misconduct in the underlying state court action.  In addition, the Court can find no indication in the Second Amended Complaint [#50] that Plaintiff's claims regarding the CSU exclusionary order are somehow directed at the City.  Indeed, there appear to be no allegations that the City had a hand in the *issuance* of any exclusionary order by CSU. The City itself explicitly concedes that "[t]he underlying substance of CSU's exclusionary orders and Plaintiff's subjective perceptions of any deficiencies with these orders are separate matters unrelated to Plaintiff's trespass claim against the City." *Motion* [#51] at 7.  Thus, the City appears to lack standing to seek dismissal of aspects of Plaintiff's claims that are not asserted against the City.  *See, e.g.*, *AVT—N.Y., L.P. v. Olivet Univ.*, No. 2:18-cv-00782-JNP-DAO, 2022 WL 1230406, at *3 (D. Utah Jan. 31, 2022) (holding that the defendant's "failure to establish it has standing to challenge personal jurisdiction on behalf of non-objecting third parties requires the court to reject its arguments and opposition"); *Petrowsky v. NextEra Energy Res., LLC*, No. 17-1403-EFM-KGG, 2017 WL

2666361, at *3 (D. Kan. June 21, 2017) (holding that the defendant had "fail[ed] to explain how it has standing to argue a 12(b)(1) motion on behalf of its separate and distinct subsidiaries").

Accordingly, the Court **recommends** that the City's Motion [#51] be **denied** to the extent it seeks dismissal on the basis of the *Rooker-Feldman* doctrine.

### b.    The State Defendants

The State Defendants argue that, "[t]o the extent that Plaintiff seeks review of the legality of Colo. Rev. Stat. § 18-4-504, the legality of CSU's exclusionary orders, and to overturn his criminal convictions for trespass," the Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine.  *Motion* [#53] at 7.  Again, based on the Court's analysis in Section III.A.2. above regarding Plaintiff's statements in his Responses [#58, #59], it appears that Plaintiff has withdrawn his complaint with respect to overturning his criminal convictions for trespass.  Further, the Court has already recommended that all claims asserted against the Board be dismissed.  *See supra* § III.B.1.  Plaintiff's few other allegations concerning the other State Defendant, Defendant Vasconcellos, also all appear to relate to his criminal convictions.  In fact, other than the caption and the Certificate of Service, Plaintiff mentions Defendant Vasconcellos only twice in the Second Amended Complaint [#50]: (1) "Defendant, Colorado Judicial Administrator, Steven Vasconcellos, resides in the State of Colorado, and is responsible for judicial administration in Colorado," *Second Am. Compl.* [#50] ¶ 7; and (2) "Employees of Larimer County Court Judicial Administration have access and use of a PDF copy of a judge's electronic signature; Plaintiff notified Judicial Administrator, Steven Vasconcellos of the unauthorized use, but he did not reply," *id.* ¶ 211.  Thus, as best the Court can decipher

from the Second Amended Complaint [#50], Plaintiff does not assert his claims regarding the legality of Colo. Rev. Stat. § 18-4-504 and of CSU's exclusionary orders against Defendant Vasconcellos, and therefore Defendant Vasconcellos appears to lack standing to seek dismissal of these aspects of Plaintiff's claims that are not asserted against him. *See, e.g.*, *AVT—N.Y., L.P.*, 2022 WL 1230406, at *3; *Petrowsky*, 2017 WL 2666361, at *3.

Accordingly, the Court **recommends** that the State Defendants' Motion [#53] be **denied** to the extent Defendant Vasconcellos seeks dismissal on the basis of the *Rooker-Feldman* doctrine.

### 3.   Standing

The City argues that Plaintiff's allegations fail to satisfy Article III's standing requirements as to Claim Three regarding the City's trespass ordinance because Plaintiff cannot establish a continuing injury for prospective relief. *Motion* [#51] at 3. The City contends that Plaintiff offers no well-pled allegations showing a credible threat of future prosecution in his Second Amended Complaint [#50]. *Id.*

Article III of the United States Constitution limits the jurisdiction of the federal courts to actual cases or controversies. U.S. Const. art. III, Section 2, cl. 1. One "element of the case-or-controversy requirement is that Plaintiff must establish that he has standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (internal citations and quotation marks omitted). To satisfy Article III's standing requirements, a plaintiff must show: "(1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely

speculative, that the injury will be redressed by a favorable decision." *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1153 (10th Cir. 2013) (quoting *Friends of the Earth v. Laidlaw Envt'l Servs.*, 528 U.S. 167, 180-81 (2000) (internal citation omitted)).  When prospective relief is sought "'the plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future.'"  *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014) (quoting *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004)).

The City argues that Plaintiff lacks standing to seek prospective relief regarding the City's trespass ordinance, i.e., Plaintiff's Claim Three.  *Motion* [#51] at 3.  Relying on *Faustin v. City and County of Denver*, 268 F.3d 942, 948 (10th Cir. 2001), and *Dias v. City and County of Denver*, 567 F.3d 1169, 1176 (10th Cir. 2009), the City states:

> Here, Plaintiff is unable to establish a credible threat of future prosecution.  During Plaintiff's 31-year residency in Fort Collins, he has been prosecuted under the trespass ordinance one time—July 12, 2019.  Plaintiff does not allege any other citations or prosecutions under the City's trespass ordinance.  One prosecution under the City's trespass ordinance in a 31-year period, without more, does not show a credible threat of future prosecution.  There are no proper allegations showing a continuing injury, and therefore he lacks standing to claim prospective relief regarding the City's trespass ordinance.

*Id.* (citing *Second Am. Compl.* [#50] ¶¶ 4, 282).  The Court disagrees that either *Faustin* or *Dias* shows that Plaintiff's Claim Three here must be dismissed for lack of standing.

In *Faustin*, the Tenth Circuit Court of Appeals stated that standing to assert injunctive relief based on application of a city ordinance required the plaintiff to "show a real and immediate threat that [ ]he will be prosecuted under this statute in the future." *Faustin*, 268 F.3d at 948.  There, the Circuit Court found that the plaintiff did not have standing because, "[i]n light of the city prosecutor's determination that Faustin was not

violating the posting ordinance because she was holding the sign and it was not affixed

in any way, it is not likely she will again be charged under" the pertinent ordinance. *Id.*

In *Dias*, the Tenth Circuit explained more fully what a "credible threat of future

prosecution" means:

> To the extent the plaintiffs seek prospective relief, we conclude that they lack standing because they have not alleged a credible threat of future prosecution under the Ordinance. Specifically, there is no credible threat of future enforcement because none of the plaintiffs currently resides in Denver and none has alleged an intent to return. To establish standing to seek prospective relief, a plaintiff must show a continuing injury; standing for retrospective relief can be based on past injuries. As the Supreme Court explained, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." Only by alleging a continuing injury can a plaintiff seeking prospective relief establish an injury in fact.
>
> In the context of a facial challenge to the constitutionality of a penal statute, a plaintiff alleges a continuing injury if "there exists a credible threat of [future] prosecution thereunder." In *Rasmussen*, we concluded that PeTA lacked standing to seek prospective relief from an allegedly unconstitutional statute because it did not have a "good chance of being . . . injured in the future." After engaging in a demonstration for animal rights near a junior high school, several PeTA members had been arrested pursuant to a Utah statute prohibiting disruptive activities on or near school grounds. Another statute defined a "school" as "any private institution of higher education or any state institution of higher education." Because PeTA had not alleged an intent to stage a future protest at an institution of higher education (as opposed to a junior high school), PeTA was not under a threat of future enforcement and lacked standing to seek prospective relief.
>
> As in *Rasmussen*, the plaintiffs have not demonstrated a continuing injury because they have not alleged a credible threat of future prosecution under the Ordinance. The scope of the Ordinance, of course, is confined to Denver's city limits. Yet, as noted, none of the plaintiffs currently resides in Denver, and none of the plaintiffs has alleged an intention to return to Denver. Absent an allegation that any of the plaintiffs intend to return to the City with their dogs, there cannot be a credible threat of future prosecution under the Ordinance. Accordingly, the plaintiffs lack standing to seek prospective relief.

*Dias*, 567 F.3d at 1177-79 (internal citations omitted).

Here, among other things, Plaintiff alleges that the Fort Collins public transportation central bus terminal is located on the CSU campus. *Second Am. Compl.* [#50] ¶¶ 54, 68. He alleges that "has a senior Fort Collins bus pass," and that he "used the bus [and the bus terminal] . . . each day" "until he was permanently banned for allegedly 'feeding squirrels.'" *Id.* ¶¶ 75, 202, 208, 228. The thrust of his Claim Three is that he wants the trespass ordinance declared unconstitutional so that he can use the public places on CSU campus again without threat of having the trespass ordinance enforced against him. *See id.* ¶¶ 286-96. It also appears clear from the Second Amended Complaint [#50] that Plaintiff faces a credible threat of future prosecution if he enters the CSU campus again, given that he was already prosecuted once under the City's trespass ordinance and that he essentially wants to engage in the same conduct again, i.e., use certain facilities located on campus. Thus, the Court finds that Plaintiff has adequately alleged standing to pursue this claim.

Accordingly, the Court **recommends** that the City's Motion [#51] be **denied** with respect to its standing argument and Plaintiff's Claim Three.

## B. Fed. R. Civ. P. 12(b)(6)

### 1. Defendant Vasconcellos

The State Defendants argue that Plaintiff has failed to adequately allege that Defendant Vasconcellos participated in any asserted constitutional deprivations. *Motion* [#53] at 10-11. As noted above, other than the caption and the Certificate of Service, Plaintiff substantively mentions Defendant Vasconcellos only twice in the Second Amended Complaint [#50]: (1) "Defendant, Colorado Judicial Administrator, Steven Vasconcellos, resides in the State of Colorado, and is responsible for judicial

administration in Colorado," *Second Am. Compl.* [#50] ¶ 7; and (2) "Employees of Larimer County Court Judicial Administration have access and use of a PDF copy of a judge's electronic signature; Plaintiff notified Judicial Administrator, Steven Vasconcellos of the unauthorized use, but he did not reply," *id.* ¶ 211.  As best the Court can decipher the Second Amended Complaint [#50], Plaintiff's claims against Defendant Vasconcellos stem solely from the state court proceedings resulting in Plaintiff's trespass conviction. As discussed in Section III.A.2. above, Plaintiff has withdrawn this aspect of his claims. Further, there are no allegations in the Second Amended Complaint [#50] or argument in the briefs before the Court that Defendant Vasconcellos has any connection to or power over the declaratory and injunctive relief Plaintiff seeks in connection with his remaining claims as discussed above and as listed in his Responses [#58, #59].  Given that Plaintiff is "not seeking relief to invalidate his arrest, prosecution, conviction or imprisonment" but rather "simply seeks declaratory and injunctive relief so that he may 'conduct activities of daily living,' and have equal access to public property," the Court finds, in conjunction with Section III.A.2. above, that Plaintiff's claims against Defendant Vasconcellos should be dismissed.

Accordingly, the Court **recommends** that Plaintiff's claims against Defendant Vasconcellos be **dismissed with prejudice**.  *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with  prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

### 2.    The City

Plaintiff's remaining claims are generally based on the City's trespass ordinance and camping ordinance.  Regarding the trespass ordinance, Fort Collins Municipal Code 17-40(a) provides in part that "[n]o person shall enter or remain unlawfully in or upon property, whether publicly or privately owned."  According to Fort Collins Municipal Code 17-1, the phrase "enter and remain unlawfully" means:

> (1) To enter or remain in or upon privately owned property when not licensed, invited, privileged or otherwise authorized to do so; (2) [t]o enter or remain in or upon publicly owned property that is not open to the public; (3) [t]o fail to leave property, whether privately or publicly owned, after being directed to do so by a person lawfully in control of the property; or (4) [t]o conduct oneself in a public place in violation of any rule or regulation issued by any officer or agency having the power of control, management, or supervision thereof, which limits or prohibits the use, activities or conduct in such public place, provided that the rule or regulation is: (i) prominently posted at all public entrances to the property; (ii) posted in such a way as to be clearly visible from the site of the infraction; or (iii) actually known to the offender.

Regarding the camping ordinance, Fort Collins Municipal Code 17-181 provides:

> It shall be unlawful for any person to camp or pitch a tent, or knowingly permit any person to camp or pitch a tent, on public property within the City. *Camping*, for the purposes of this Section, shall mean to sleep, spend the night, reside or dwell temporarily with or without bedding or other camping gear and with or without shelter, or to conduct activities of daily living such as eating or sleeping, in such place unless such person is camping in compliance with Chapter 23 in a natural or recreation area.  *Camping* shall not include incidental napping or picnicking.

### a.    Absolute Immunity

The City argues that it "is entitled to absolute immunity under § 1983, for the actions of its employees taken in connection with Plaintiff's prosecution for trespass." *Motion* [#51] at 5-6.  The City asserts this argument specifically in connection with Plaintiff's Claim Two regarding wrongful prosecution. *Id.* at 5.  As stated in Section III.A.2. above, Plaintiff appears to have withdrawn this aspect of his claims.  However, to the

extent this argument could be construed as being made toward any remaining parts of Claim Two, the Court notes that "[a]bsolute immunity applies to 'officials whose special functions or constitutional status requires complete protection from suit,' like legislators acting in their legislative capacity, judges acting in their judicial capacity, and prosecutors and executive officers engaged in adjudicative functions, as well as the President of the United States."  *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1039 n.14 (10th Cir. 2022) (quoting *Harlow*, 457 U.S. 800, 806 (1982)).  None of the cases cited by the City support the proposition that a municipality may assert absolute immunity for itself based on the work of its employees.  *Motion* [#51] at 5-6 (citing *Butz v. Economou*, 438 U.S. 478 (1978); *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Pierson v. Ray*, 386 U.S. 547 (1967); *Scott v. Hern*, 216 F.3d 897 (10th Cir. 2000); *Hammon v. Bales*, 843 F.2d 1320 (10th Cir. 1988); *Dohaish v. Tooley*, 670 F.2d 934 (10th Cir. 1982)).

Accordingly, the Court **recommends** that the City's Motion [#51] be **denied** to the extent the City seeks absolute immunity.

### b.    Fifth Amendment

The City argues that Plaintiff has not adequately alleged a taking of personal property necessary to state a Fifth Amendment takings clause violation, with respect to his second, third, or fourth claims.  *Motion* [#51] at 13-15.  The City reasonably interprets Plaintiff's claim here as a regulatory takings claim, which Plaintiff does not contest in his Response [#58].  Rather, in response, Plaintiff does not substantively address the City's argument, merely stating that a question in the case is "whether such infringement of His Constitutional and Inalienable Rights constitutes a 'Taking.'"  *Response* [#58] at 19.

"The Fifth Amendment's Takings Clause provides that 'private property [shall not] be taken for public use, without just compensation.'"  *N. Mill St., LLC v. City of Aspen*, 6 F.4th 1216, 1224 (10th Cir. 2021) (quoting U.S. Const. amend. V).  "The Supreme Court has recognized that 'government regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster—and that such "regulatory takings" may be compensable under the Fifth Amendment.'"  *N. Mill St., LLC*, 6 F.4th at 1224 (quoting *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 537 (2005)). "The Court has identified two categories of regulatory action that are 'per se' takings: (1) 'where government requires an owner to suffer a permanent physical invasion of [his] property—however minor,' and (2) 'regulations that completely deprive an owner of "all economically beneficial use" of [his] property.'"  *N. Mill St., LLC*, 6 F.4th at 1224 (quoting *Lingle*, 544 U.S. at 538).

Plaintiff's allegations do not adequately allege either of these types of takings.  He has not alleged that the City has seized any of his personal property while enforcing its trespass and camping ordinances.  He has not alleged a physical invasion of his property. He has not alleged that the City's ordinances have deprived him of all economically beneficial use of his property.  As the City points out, the only private-property item alleged in the Second Amended Complaint [#50] is Plaintiff's vehicle, but Plaintiff fails to allege any impact on the economic value or benefit of his vehicle.  *See Second Am. Compl.* [#50] ¶ 180 (stating that the trespass and camping ordinances "denied Plaintiff his constitutional and inalienable right to use his private property (use of his vehicle to conduct activities of daily living)").  Plaintiff has not directed the Court's attention to any other private property which may be at issue.

- 22 -

Alternatively, "when a regulation impedes the use of property without depriving the owner of all economically beneficial use, a taking still may be found based on 'a complex of factors,' including (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." *Murr v. Wisconsin*, 137 S. Ct. 1933, 1943 (2017).

Applying these factors to the City's trespass ordinance, Plaintiff essentially alleges that the City's trespass ordinance violated the takings clause because it deprived him of unlimited access to public property.  Plaintiff does not allege that he owned any private property which was taken by the City in connection with the trespass issue, and, of course, he does not own the public property at issue.  Thus, his Fifth Amendment claim fails to the extent it concerns the City's trespass ordinance.

Applying these factors to the City's camping ordinance, the crux of Plaintiff's takings claim is that he should be able to use his car essentially as he deems appropriate, without restriction by the City.  The Court is unaware of any legal authority supporting such a theory.  The government regularly places limitations on how personal property may be used and maintained; the question is whether any such limitation is "so onerous that its effect is tantamount to a direct appropriation or ouster."  *Lingle*, 544 U.S. at 537. Plaintiff has not sufficiently alleged that the City's camping ordinance deprives him of the use of his vehicle to such an extent that it is "tantamount to a direct appropriation" of the vehicle.  Thus, his Fifth Amendment claim fails to the extent it concerns the City's camping ordinance.

Accordingly, the Court **recommends** that, to the extent Plaintiff's claims are premised on the Fifth Amendment, that such claims be **denied with prejudice**. *See Brereton*, 434 F.3d at 1219.

c.   **Eighth Amendment**

The City argues with respect to the second, third, and fourth claims that Plaintiff fails to adequately allege an Eighth Amendment violation. *Motion* [#51] at 15-17; *Reply* [#61] at 12. In response, Plaintiff appears to abandon any argument under the Eighth Amendment with respect to the trespass ordinance, as appears appropriate given the withdrawal of the aspects of his claims on which this argument was originally based, as discussed in § III.A.2. above, instead only arguing that the camping ordinance violates the Eighth Amendment. *Response* [#58] at 18 (discussing the Eighth Amendment in connection with section discussing whether the City's camping ordinance is unconstitutional).

The Eighth Amendment limits the type of punishment the government may impose, prohibits punishment that is grossly disproportionate to the severity of the crime, and places limits on what type of conduct the government may criminalize. *Ingraham v. Wright*, 430 U.S. 651, 667 (1976). However, it is only applicable after a formal adjudication of guilt. *Halik v. Darbyshire*, No. 20-cv-01643-PAB-KMT, 2021 WL 4556188, at *13 (D. Colo. Aug 23, 2021) (citing *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 809 (10th Cir. 1999) ("The Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of cruel and unusual punishments on those convicted of crimes."); *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) ("[T]he State does not acquire the power to punish with which the

Eighth Amendment is concerned until after it has secured a formal adjudication of guilt[.]")).  Here, Plaintiff does not allege that he was ever convicted of violating the City's camping ordinance and, in fact, he only alleges the opposite.  *See Second Am. Compl.* [#50] ¶ 303 ("Plaintiff was charged (7) seven times with 'camping'; only one case was tried, and Plaintiff was found 'not guilty' in 2014; case # 2014-0185514-MD.   Most recently, Plaintiff was cited with 'camping'; Citation # 384557; Fort Collins Municipal Court Case: FC-20-4935-MD, which was dismissed on September 17, 2020, and closed." (emphases omitted)), ¶ 149 (stating that Plaintiff was issued a citation on August 20, 2017, but that the case was later dismissed).  Thus, to the extent Plaintiff's claims are asserted under the Eighth Amendment in connection with the camping ordinance, such claims fail.

Accordingly, the Court **recommends** that Plaintiff's claims be **dismissed with prejudice** to the extent they are premised on the Eighth Amendment.  *See Brereton*, 434 F.3d at 1219.

### d.   Fourteenth Amendment

#### i.   Equal Protection

The City argues in connection with the second and fourth claims that Plaintiff has not adequately alleged a Fourteenth Amendment equal protection claim.  *Motion* [#51] at 17-18.  Plaintiff does not explicitly frame his Fourteenth Amendment claim as an equal protection claim and does not directly respond to the City's argument in his Response [#58], although he does generally assert that the City targets homeless persons through discriminatory enforcement of its trespass and camping ordinances.  *See, e.g.*, *Second*

*Am. Compl.* [#50] ¶ 56. Thus, liberally construed, Plaintiff may be asserting a selective enforcement claim.

The Equal Protection Clause prohibits selective enforcement of the law based on race, ethnicity, or other impermissible considerations, although the standard for proving such a claim is "demanding." *Whren v. United States*, 517 U.S. 806, 813 (1996); *United States v. Armstrong*, 517 U.S. 456, 463 (1996). To establish a claim of selective law enforcement under § 1983, "[t]he plaintiff must demonstrate that the defendant's actions had a discriminatory effect and were motivated by a discriminatory purpose." *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1168 (10th Cir. 2003). "[T]he discriminatory purpose element requires a showing that discriminatory intent was a 'motivating factor in the decision' to enforce the criminal law against the [plaintiff]." *United States v. Alcaraz–Arellano*, 441 F.3d 1252, 1264 (10th Cir. 2006) (quoting *Marshall*, 345 F.3d at 1168). However, the discriminatory purpose need not be the only purpose. *Villaneuva v. Carere*, 85 F.3d 481, 485 (10th Cir. 1996).

"[C]ourts have not recognized homeless persons as a suspect . . . class . . . ." *Kalashnikov v. Herbert*, No. 2:19-cv-00411-CW-JCB, 2020 WL 7408213, at *5 n.16 (D. Utah Dec. 2, 2020); *see also Joel v. City of Orlando*, 232 F.3d 1353, 1357 (11th Cir. 2000) ("Homeless persons are not a suspect class, nor is sleeping out-of-doors a fundamental right."); *State of Hawaii v. Sturch*, 921 P.2d 1170, 1176 (Haw. Ct. App. 1996) (noting that there is "no authority supporting a specific constitutional right to sleep in a public place" unless it is expressive conduct protected by the First Amendment or other fundamental right). Thus, because Plaintiff has not identified a fundamental right or alleged that he is a member of a suspect class, the City needs only a rational basis for its actions. *See Noe*

*v. True*, No. 21-1373, 2022 WL 5080196, at *9 (10th Cir. Oct. 5, 2022) (citing *Vacco v. Quill*, 521 U.S. 793, 799 (1997) ("If a . . . classification or distinction neither burdens a fundamental right nor targets a suspect  class, we will uphold it so long as it bears a rational  relation  to  some  legitimate  end." (brackets  and  internal  quotation  marks omitted))).

Regarding the trespass ordinance, Plaintiff generally alleges that the City targets homeless individuals through enforcement of its trespass ordinance, but he provides no specific allegation that he was targeted or charged with violating the trespass ordinance *because* he is homeless.  Instead, Plaintiff alleges that CSU issued him an exclusionary order for feeding squirrels and that later CSU officers issued Plaintiff a citation under the City's trespass ordinance for violating that exclusionary order.  In addition, there are no allegations  providing  any  detail  specific  enough  to  adequately  allege  that  the  City enforces  its  trespass  ordinance  with  discriminatory  purpose  and  discriminatory  effect. Thus, the Court finds that Plaintiff fails to allege an equal protection claim with respect to the trespass ordinance.

Regarding the camping ordinance, Plaintiff has not provided allegations sufficient to  show  that  the  City's  enforcement  has  a  discriminatory  purpose  or  effect.   The  City directs the Court's attention to *Joel v. City of Orlando*, 232 F.3d 1353, 1360 (11th Cir. 2000), where the Eleventh Circuit Court of Appeals held that a similar camping ordinance did not encourage discriminatory enforcement.  The Circuit Court stated:

> The fact that the vast majority of people arrested for violating the ordinance
> are homeless does not, by itself, show that City police officers discriminate
> against homeless persons in the enforcement of the ordinance.  It seems
> entirely reasonable to conclude that homeless persons would be more likely
> to engage in the type of conduct prohibited by the ordinance and would
> therefore  constitute  the  majority  of  people  arrested  for  violating  its

> provisions.  To illustrate with an analogy, the fact that the vast majority of people arrested for violating laws against public intoxication are alcoholics would not by itself show that those laws were being applied in a discriminatory fashion against those who suffer from alcoholism.

*Joel*, 232 F.3d at 1360, n. 5.  Here, although Plaintiff alleges that he has been cited with violating the camping ordinance seven times, he does not provide allegations of any conduct revealing a motivation to charge Plaintiff because he is homeless.  Similarly, he has not alleged any facts which demonstrate that the City cited other homeless individuals with violations of its camping ordinance because of their homelessness.  Thus, the Court finds that Plaintiff fails to allege an equal protection claim with respect to the camping ordinance.

Accordingly, the Court **recommends** that Plaintiff's equal protection claim, if any, be **dismissed with prejudice**.  *See Brereton*, 434 F.3d at 1219.

### ii.    Due Process

The City argues that Plaintiff fails to adequately allege a Fourteenth Amendment due process violation.  *Motion* [#51] at 6-13.  The Court begins with the procedural due process as-applied challenge, then addresses the procedural due process facial challenge, and finally addresses any substantive due process claim.

Regarding Plaintiff's procedural due process as-applied challenge, the City first argues that the statute of limitations bars parts of Plaintiff's claims.  *Motion* [#51] at 3-4. Specifically, the City argues that any as-applied challenge to the City's trespass ordinance is time-barred in full as well as that any as-applied challenge to the City's camping ordinance is time-barred in part.  *Reply* [#61] at 6-7.

The statute of limitations for § 1983 actions brought in Colorado is two years from the time the cause of action accrued.  *Braxton v. Zavaras*, 614 F.3d 1156, 1159 (10th Cir.

2010).  "Section 1983 claims accrue, for the purposes of the statute of limitations, when plaintiff knows or has reason to know of the injury which is the basis of his action."  *Kripp v. Luton*, 466 F.3d 1171, 1175 (10th Cir. 2006).

Regarding the trespass ordinance, Plaintiff's complaint stems from the trespass citation he was issued on July 12, 2019.  *Second Am. Compl.* [#50] ¶ 222.  Plaintiff does not dispute this but appears to invoke the continuing wrong doctrine, which can be used to toll a statute of limitations.  *Response* [#58] at 10; *see Tiberi v. Cigna Corp.*, 89 F.3d 1423, 1431 (10th Cir. 1996).  Under this doctrine, "where a tort involves a continuing or repeated injury, the cause of action accrues at, and limitations begin to run from, the date of the last injury."  *Tiberi*, 89 F.3d at 1430.  However, "the doctrine cannot be employed where the plaintiff's injury is definite and discoverable, and nothing prevented the plaintiff from coming forward to seek redress."  *Id.* at 1431 (internal quotation marks omitted). Here, despite the fact that an exclusionary order was issued that lasted a certain period of time, the actual injury occurred at the latest when Plaintiff was cited for violating the City's trespass ordinance on July 12, 2019.  To the extent Plaintiff incurred injury, he had actual knowledge of his injury as of July 12, 2019, despite the fact that any lasting effects from that injury may have continued into the future.  *See Tiberi*, 89 F.3d at 1430.  Thus, he had until July 12, 2021, in which to file his claims.  *See Braxton*, 614 F.3d at 1159; *Kripp*, 466 F.3d at 1175.  He did not do so until August 26, 2021, and thus any as-applied challenge to the trespass ordinance is time-barred.

Regarding the camping ordinance, Plaintiff alleges that he has been charged seven times under this ordinance.  *Second Am. Compl.* [#50] ¶ 303.  He provides little in the way of specific dates, although he says that he was tried and found "not guilty" in 2014

in Case No. 2014-0185514-MD; that he was cited on August 20, 2017, in a case that was later dismissed; and that another citation, #384557, Fort Collins Municipal Court Case FC-20-4935-MD, was dismissed and closed on September 17, 2020.  *Id.*  It is unclear from the Second Amended Complaint [#50] when most of these seven charges occurred specifically, but it is clear that the charge for which he was tried in 2014 is time-barred, having occurred well before the two years prior to Plaintiff's filing of this lawsuit on August 26, 2021.  *See Compl.* [#1].  Similarly, the August 20, 2017 citation is clearly time-barred, having occurred more than two years before the lawsuit was filed.  *See id.*   Given that "[a] statute of limitations defense may be appropriately resolved on a Rule 12(b) motion [only] when the dates given in the complaint make clear that the right sued upon has been extinguished," *see Herrera v. City of Espanola*, 32 F.4th 980, 991 (10th Cir. 2022) (internal quotation marks omitted), and given that it is unclear when most of the charges occurred, the Court finds that only the 2014 citation and the August 20, 2017 citation referenced by Plaintiff are barred by the statute of limitations with respect to any as-applied challenge to the camping ordinance.

As for the remainder of his camping ordinance as-applied due process claim, Plaintiff alleges that he has been cited a total of seven times with violation of this ordinance.  *Second Am. Compl.* [#50] ¶ 303.  However, he fails to provide any detail whatsoever about the circumstances underlying these citations, such as when they occurred, where they occurred, what Plaintiff was doing at the time of the violations, and, for most instances, the dispositions of the citations.  Because Plaintiff has not made allegations sufficient to support his as-applied due process challenge, this portion of his claim fails.

Turning to the next part of Plaintiff's procedural due process claim, Plaintiff challenges as facially unconstitutional the City's trespass ordinance as overbroad and unduly vague and the City's camping ordinance as overbroad.  *See Response* [#58] at 15 (regarding trespass), 17 (regarding camping, and explicitly disclaiming any vagueness challenge).

"Facial challenges are strong medicine."  *Dias*, 567 F.3d at 1179 (quoting *Ward v. Utah*, 398 F.3d 1239, 1246 (10th Cir. 2005)).  "'Although passing on the validity of a law wholesale may be efficient in the abstract, any gain is often offset by losing the lessons taught by the particular, to which common law method normally looks.'"  *Dias*, 567 F.3d at 1179 (quoting *Sabri v. United States*, 541 U.S. 600, 608-09 (2004)).  The Tenth Circuit has therefore "held that facial challenges are appropriate in two circumstances: (1) when a statute threatens to chill constitutionally protected conduct (particularly conduct protected by the First Amendment); or (2) when a plaintiff seeks pre-enforcement review of a statute because it is incapable of valid application."  *Dias*, 567 F.3d at 1179-80 (citing *United States v. Gaudreau*, 860 F.2d 357, 360-61 (10th Cir.1988); *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494-95 & n.5 (1982)).

Here, neither of these circumstances is applicable.  First, neither the trespass ordinance nor the camping ordinance threatens to chill any constitutionally protected conduct.  *See, e.g.*, *Church v. City of Huntsville*, 30 F.3d 1332, 1345 (11th Cir. 1994) (holding that trespassing on public lands is not a constitutionally protected right); *Joel*, 232 F.3d at 1357 (holding that sleeping on public property is not a constitutionally protected right).  Second, "a facial challenge to the constitutionality of a statute may in some instances be appropriate on pre-enforcement review."  *United States v. Gaudreau*,

860 F.2d 357, 360 (10th Cir. 1988). "In a declaratory judgment action no one has been charged so the court cannot evaluate the statute as applied." *Id.* at 360-61. "In these cases, the challenger may attempt to facially attack the statute . . . ." *Id.* at 361. Here, the City's trespass and camping ordinances have both been in effect since 1972. *See* Fort Collins Municipal Code 1972 §§ 60-22, 84-1(E). Plaintiff alleges that he has been cited with violating the trespass ordinance once and the camping ordinance seven times since about 2014. *See, e.g.*, *Second Am. Compl.* [#50] ¶¶ 14, 303. Thus, pre-enforcement review is inappropriate where the two ordinances are approximately forty years old and where both have been previously enforced. Thus, Plaintiff's facial challenges to the two ordinances is improper and fails to state a claim.

Finally, the Court turns to the substantive due process claim. *See, e.g.*, *Second Am. Compl.* [#50] at 5 (stating that "Plaintiff has been denied substantive due process . . ."). While the precise basis for this claim is not entirely clear, he may be asserting this claim based on his statements indicating that the due process clause has been violated because enforcement of the ordinances target homeless persons. As previously noted, "[h]omeless persons are not a suspect class, nor is sleeping out-of-doors a fundamental right." *Joel*, 232 F.3d at 1357. Also as previously noted, if an ordinance does not infringe upon a fundamental right or target a protected class, claims are evaluated under rational basis review. *See Dias*, 567 F.3d at 1182 ("Even if the Ordinance does not implicate a fundamental right, it must nonetheless bear a rational relationship to a legitimate government interest."); *see also id.* (noting that "the 'shocks the conscience' standard is not applicable to cases in which plaintiffs advance a substantive due process challenge to a *legislative* enactment. Instead, it is an inquiry reserved for cases challenging

*executive* action" (emphases in original)).  This means that an ordinance "need only be rationally related to a legitimate government purpose."  *Powers v. Harris*, 379 F.3d 1208, 1215 (10th Cir. 2004).  In evaluating such claims, courts consider whether a reasonably conceivable rational basis exists and "are not allowed to second guess the wisdom of legislative policy-determinations."  *Ramsey Winch Inc. v. Henry*, 555 F.3d 1199, 1210 (10th Cir. 2009).  Legislative enactments are entitled to a "strong presumption of validity" under a rational basis review such that a court's review must be a "paradigm of judicial restraint."  *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314-15 (1993).

To survive a motion to dismiss, a plaintiff must "plausibly allege[ ] that the [o]rdinance is not rationally related to a government interest."  *Dias*, 567 F.3d at 1183. For example, in *Dias*, the plaintiffs did not contest that the City of Denver had "a legitimate interest in animal control—the protection of health and safety of the public."  *Id.*  The Tenth Circuit Court of Appeals ultimately held that the plaintiffs had adequately "alleged that the means by which Denver has chosen to pursue that interest are irrational" by alleging that there was "a lack of evidence that pit bulls as a breed pose a threat to public safety or constitute a public nuisance . . . ."  *Id.*  In short, they did so by providing specific allegations that, "although pit bull bans sustained twenty years ago may have been justified by the then-existing body of knowledge, the [current] state of science . . . is such that the bans are no longer rational."  *Id.*

Here, Plaintiff has not provided such allegations.  Regarding the trespass ordinance, individuals are prohibited from remaining unlawfully on public or private property.  Plaintiff has not adequately alleged that no rational basis underlies the City's interest in this law.  By way of example only, he has not sufficiently alleged that the

trespass ordinance is not rationally related to such state interests as the protection of property rights, promotion of public safety, and the prevention of crime.  *See, e.g.*, *May v. People*, 636 P.2d 672, 679 (Colo. 1981) ("Both legitimate state interests, in privacy and in safety, can be furthered by an ordinance punishing trespass after warning.").  Thus, the Court finds that Plaintiff has failed to plausibly allege that the trespass ordinance is not rationally related to a government interest, and therefore this aspect of his claim fails under the substantive portion of the due process clause.

Regarding the camping ordinance, individuals are prohibited from sleeping and conducting activities of daily living on public property except in natural or recreation areas. Again, Plaintiff has not adequately alleged that no rational basis underlies the City's interest in this law.  By way of example only, he has not sufficiently alleged that the camping ordinance is not rationally related to such state interests as the promotion of aesthetics, sanitation, public health, and safety.  *See, e.g.*, *Joel*, 232 F.3d at 1358 (citing *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 296-98 (1984)).  Thus, the Court finds that Plaintiff has failed to plausibly allege that the camping ordinance is not rationally related to a government interest, and therefore this aspect of his claim fails under the substantive portion of the due process clause.

Accordingly, the Court **recommends** that the City's Motion [#51] be **granted** insofar as that Plaintiff's as-applied challenge to the trespass ordinance under Claim Two and as-applied challenge to the camping ordinance concerning the 2014 citation under Claim Four be **dismissed with prejudice**, *see Brereton*, 434 F.3d at 1219; that Plaintiff's as-applied challenge to the remainder of the camping ordinance claim be **dismissed without prejudice**, *see id.*; that Plaintiff's facial challenge to both ordinances be

**dismissed with prejudice**, *see id.*; and that Plaintiff's substantive due process claim as to both ordinances be **dismissed with prejudice**, *see id.*

### e.     Fourth Amendment

Plaintiff conclusorily states once that the City's camping ordinance violates his constitutional rights under the Fourth Amendment as part of a laundry list of amendments where he also mentions the Fifth, Eight, and Fourteenth Amendments.   *Second Am. Compl.* [#50] ¶ 306.   However, he provides no allegations that he was searched or that his property was seized which are sufficient to state a Fourth Amendment claim.

Accordingly, the Court **recommends** that Plaintiff's Fourth Amendment claim be **dismissed with prejudice**.   *See Brereton*, 434 F.3d at 1219.

### f.     Sections 1985 and 1986

Finally, the City argues that Plaintiff fails to state claim under 42 U.S.C. §§ 1985 and 1986.   *Motion* [#51] at 19-20.   Plaintiff responds that, "[c]ontemporaneous with Plaintiff being issued a trespass citation, the City amended the City charter and 'trespass' ordinance, and hired private attorneys to act as judge and prosecutor in Plaintiff's trespass case, thus proving a § 1985 conspiracy." *Response* [#58] at 14.   This responsive argument would thus appear to go toward aspects of his claims which have been withdrawn, but the Court addresses it nevertheless to the extent it could be construed more broadly, and in light of certain other statements in his Second Amended Complaint [#50].

Section 1985(3) provides: "If two or more persons . . . conspire . . . for the purpose of depriving . . . any person . . . of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . [or] cause to be done, any act in furtherance of the

object of such conspiracy . . . the party so injured or deprived may have an action for the recovery of damages . . . ."  "The essential elements of a § 1985(3) claim are: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom."   *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)).

"[H]owever, § 1985(3) does not 'apply to all tortious, conspiratorial interferences with the rights of others,' but rather, only to conspiracies motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'"  *Tilton*, 6 F.3d at 686 (quoting *Griffin*, 403 U.S. at 101-02).  "The other 'class-based animus' language of this requirement has been narrowly construed and does not, for example, reach conspiracies motivated by an economic or commercial bias."  *Tilton*, 6 F.3d at 686 (citing *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL–CIO v. Scott*, 463 U.S. 825, 837 (1983)).  "In fact, the Supreme Court has held that 'it is a close question whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause.'"  *Tilton*, 6 F.3d at 686 (quoting *Scott*, 463 U.S. at 836).  In addition, "§ 1985(3) covers only conspiracies 'aimed at interfering with rights that are protected against private, as well as official, encroachment.'"   *Tilton*, 6 F.3d at 686 (quoting *Scott*, 463 U.S. at 833).  "'There are few such rights (we have hitherto recognized only the Thirteenth Amendment right to be free from involuntary servitude, *United States v. Kozminski*, 487 U.S. 931 (1988), and, in the same Thirteenth Amendment context, the right of interstate travel, *see United States v. Guest*, 383 U.S. 745, 759 n.17 (1966)) . . . .'"  *Tilton*, 6 F.3d at 686 (quoting *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263,

278 (1993)).   "In short, to state a claim under 42 U.S.C. § 1985(3) for a non-racially motivated private conspiracy, if indeed such a claim can be stated, it is necessary to plead, inter alia: 1. that the conspiracy is motivated by a class-based invidiously discriminatory animus; and 2. that the conspiracy is aimed at interfering with rights that by definition are protected against private, as well as official, encroachment."   *Tilton*, 6 F.3d at 686.

Here, Plaintiff asserts that the City violated § 1985 in two ways: (1) City employees conspired to violate Plaintiff's rights during his criminal trial, *see Am. Compl.* [#50] ¶¶12, 282, (which, as stated, appears to have been withdrawn as a claim), and (2) City officers conspired to enforce an overly broad and vague camping ordinance, *see id.* ¶ 20. Regardless, Plaintiff does not adequately allege how City employees somehow conspired against him or that any such conspiracy was motivated by a class-based invidiously discriminatory animus and aimed at interfering with rights protected against both private and official enforcement.   As such, his § 1985(3) claim fails.

Section 1986 provides for liability for damages if a person has "knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do . . . ."   This means that a § 1986 claim is "dependent upon the existence of a valid claim under § 1985." *Brown v. Reardon*, 770 F.2d 896, 907 (10th Cir. 1985) (citations omitted).   Thus, because Plaintiff has failed to adequately allege a claim under § 1985, his § 1986 claim also fails. *See, e.g.*, *Peckham v. Schmidt*, No. 22-3127, SAC, 2022 WL 4300227, at *2 (D. Kan. Sept. 19, 2022).

Accordingly, the Court **recommends** that the City's Motion [#51] be **granted** to the extent that Plaintiff's §§ 1985 and 1986 claims be **dismissed with prejudice**. *See Brereton*, 434 F.3d at 1219.

## C.    Supplemental Jurisdiction

Plaintiff may also be asserting certain Colorado state law claims and issues, such as, for example, violation of Article II, section 15 of the Colorado Constitution and declaratory judgment regarding whether Colo. Rev. Stat. § 18-9-109(1) prohibits exclusion from CSU campus, whether the City trespass ordinance applies to state property like CSU, and whether Colo. Rev. Stat. § 18-4-201(1) exempts public property from trespass laws. *See, e.g.*, *Second Am. Compl.* [#50] at 15; *Response* [#58] at 2, 15.

28 U.S.C. § 1367(a) states:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

State and federal claims form part of the same case or controversy if they "derive from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). However, pursuant to 28 U.S.C. § 1367(c), "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."

Plaintiff brings this action in federal court pursuant to 28 U.S.C. § 1331. *Second Am. Compl.* [#50] ¶ 1. He does not allege that the Court has diversity jurisdiction over the case under § 1332. *See id.* ¶¶ 1-7. Thus, in addition to the original jurisdiction the Court has over Plaintiff's constitutional claims, the Court has supplemental jurisdiction

over Plaintiff's state law claims under 28 U.S.C. § 1367.  *See United Mine Workers of Am.*, 383 U.S at 725.

However, "[i]f federal claims are dismissed before trial, leaving only issues of state law, 'the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.'"  *Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 549 (10th Cir. 1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  The Court found above that Plaintiff has failed to state any federal claims, and therefore that these claims should be dismissed.  Therefore, the Court further finds that the exercise of supplemental jurisdiction over Plaintiff's state law claims should be declined.

Accordingly, the Court recommends that the Motions [#51, #53] be **granted** to the extent that any remaining state law claims be **dismissed without prejudice**.  *See Bauchman*, 132 F.3d at 549.

### IV.    Conclusion

For the reasons stated above,

IT IS HEREBY **RECOMMENDED** that the City's Motion [#51] be **GRANTED** and that all claims asserted against the City be **DISMISSED** as outlined above.

IT IS FURTHER **RECOMMENDED** that the State Defendants' Motion [#53] be **GRANTED** and that all claims asserted against the Board and Mr. Vasconcellos be **DISMISSED** as outlined above.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo

review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  February 13, 2023

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge